UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

STACIE L.S.,

                                        Plaintiff,

v.                                                                  5:24-CV-01042 (AMN/ML)

COMMISSIONER OF SOCIAL
SECURITY,

                                        Defendant.

_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                          HOWARD D. OLINSKY, ESQ.
  *Attorney for Plaintiff*
250 South Clinton St. Ste. 210
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION          FERGUS KAISER, ESQ.
OFFICE OF GENERAL COUNSEL
  *Attorney for Defendant*
6401 Security Boulevard
Baltimore, MD 21235


**MIROSLAV LOVRIC**, United States Magistrate Judge

<u>**REPORT AND RECOMMENDATION**</u>

        Stacie L. S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security ("Commissioner" or

"Defendant") denying her application for Disability Insurance Benefits ("DIB").  (Dkt. No. 1.)

The matter was referred to me for Report and Recommendation by the Honorable Anne M.

Nardacci, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

(Dkt. No. 3.)  This case has proceeded in accordance with General Order 18.  Currently before

this Court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for

judgment on the pleadings.  (Dkt. Nos. 8, 12.)  Plaintiff submitted a reply brief.  (Dkt. No. 13.)  Oral argument was not heard.

For the reasons set forth below, this Court recommends that the District Court deny Plaintiff's motion for judgment on the pleadings, grant Defendant's motion for judgment on the pleadings and affirm the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On March 8, 2022, Plaintiff protectively filed an application for DIB alleging disability beginning from April 20, 2019.  (T. 180-90.)[1]  Her application was denied initially on June 16, 2022, and again upon reconsideration February 23, 2023.  (T. 75, 92.)  Plaintiff's request for a hearing was granted.  (T. 162.)  On July 20, 2023, Plaintiff and vocational expert ("VE") Jerry Hildre testified by telephone before Administrative Law Judge ("ALJ") Mary Jane Pelton.  (T. 45-73.)  The ALJ issued an unfavorable decision on November 9, 2023.  (T. 10-28.)  The Appeals Council denied Plaintiff's request for review on July 23, 2024.  (T. 1-6.)

Plaintiff commenced this proceeding on August 26, 2024, to challenge the Commissioner's denial of disability benefits.  (Dkt. No. 1.)

## II.    GENERALLY APPLICABLE LAW

### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.*

---

[1]    The Administrative Record/Transcript is found at Dkt. No. 7.  Citations to the Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns.  Citations to the parties' submission will use page numbers assigned by CM/ECF, the Court's electronic filing system.

*Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court

cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B. Standard for Benefits

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past

4

> relevant work despite the impairment; and (5) whether there are
> significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540

U.S. 20, 24 (2003).

## III.    FACTS

As of the date of the ALJ's decision, Plaintiff was 44 years old.  (T. 26, 28, 180.)  She

completed three years of college. (T. 215.)  She has past relevant work as a home health aide.

(T. 215.)  Although Plaintiff worked after her alleged disability onset date, the ALJ determined

that it did not rise to the level of substantial gainful activity. (T. 13, 229.)  Plaintiff's DIB

application alleges disability due to anxiety, back injury, heart palpitation, fibromyalgia, asthma,

obstructive sleep apnea, gastro esophagus reflux disease, calculus of kidneys, gastric bypass, and

reconstructive ankle surgery with screws.  (T. 214.)

The record includes Plaintiff's relevant medical treatment history. Rather than

summarizing the records at the outset, the Court will refer to the pertinent records during my

discussion of Plaintiff's arguments.

## IV.    THE ALJ'S DECISION

As an initial matter, the ALJ determined that Plaintiff met the insured status requirements

through December 31, 2026.  (T. 11.)  At step two, the ALJ found that Plaintiff has the following

severe impairments: "degenerative disc disease of the lumbar spine, degenerative joint disease,

and reconstructive surgery of a joint, asthma, obesity, anxiety disorder, depressive disorder, and

post-traumatic stress disorder (PTSD)."  (*Id*.)

At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or

in combination did not meet or medically equal the severity of a listed impairment, including

Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), Listing

1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), Listing 1.18

(abnormality of a major joint(s) in any extremity), Listing 3.02 (chronic respiratory disorders),

Listing 3.03 (asthma), Listing 12.04 (depressive, bipolar and related disorders), Listing 12.06

(anxiety and obsessive-compulsive disorders, and Listing 12.15 (trauma- and stressor-related

disorders).  (T. 13-14.)  Next, the ALJ found that Plaintiff could perform light work with certain

limitations.  (T. 16.)  Specifically, the ALJ found that Plaintiff:

> could frequently climb stairs and ramps. She could balance as
> defined in the SCO, stoop, kneel, crouch, and crawl. The claimant
> should avoid exposure to fumes, odors, dusts, gases, and poor
> ventilation. The claimant should avoid exposure to hazards. The
> claimant can understand, remember, and carry out simple
> instructions. The claimant can use judgment to make simple work-
> related decisions. The claimant should work in a job with occasional
> changes in the routine work setting. The claimant cannot perform
> work requiring a specific production rate or perform work which
> requires hourly quotas. The claimant should have occasional contact
> with coworkers and supervisors, and no interaction with the public.

(T. 16.)

In making the RFC determination, the ALJ stated that she considered all of Plaintiff's

symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R.

§ 404.1529" and Social Security Ruling 16-3p.  (*Id*.)  The ALJ further stated that she considered

opinion evidence and prior administrative medical findings in accordance with 20 C.F.R.

404.1520c.  (*Id*.)  The ALJ also considered Plaintiff's subjective complaints regarding pain,

symptoms, and functional limitations raised during the hearing and in the overall administrative

record and found them " . . . not entirely consistent with the medical evidence and other evidence

in the record . . ."  (T. 17.)

At step four, the ALJ found that Plaintiff is unable to perform any of her past relevant work.  (T. 25.)  Relying on the VE testimony, the ALJ next found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform.  (T. 26-27.)  Accordingly, the ALJ found that Plaintiff has not been disabled from her alleged onset date of April 20, 2019, through the date of the ALJ's decision.  (T. 28.)

## V.  ISSUES IN CONTENTION

Plaintiff argues that the ALJ's decision contains an unresolved discrepancy between (1) the ALJ's step three determination that Plaintiff had "moderate limitations" in concentration, persistence, and pace, (2) the ALJ's RFC determination that Plaintiff could perform less than the full range of light work, and (3) VE testimony "that if an individual could only frequently – up to two-thirds of the time – maintain attention and concentration for simple tasks, such a restriction would eliminate competitive employment."  (Dkt. No. 8 at 13-16.)  Additionally, Plaintiff argues the ALJ failed to properly evaluate the supportability and consistency of the opinion from psychiatric consultative examiner Jeanne Shapiro, Ph.D.  (Dkt. No. 8 at 16-23.)  Lastly, Plaintiff alleges the ALJ's RFC determination failed to incorporate the moderate bending restrictions opined by consultative examiner Elke Lorensen, M.D., despite finding her opinion to be persuasive. (Dkt. No. 8 at 23-24.)  The Commissioner contends that the ALJ properly evaluated all of the record evidence, resulting in an RFC and disability determination that are supported by substantial evidence.  (Dkt. No. 12 at 7-15.)

## VI.  LEGAL STANDARDS

### A. RFC

RFC is "what [the] individual can still do despite his or her limitations.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary

work setting on a regular and continuing basis . . ."  A "regular and continuing basis" means

eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No.

3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v.

Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *Babcock v.

Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018);

*Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F.

Supp. 3d 349, 361 (N.D.N.Y. 2016).

       In rendering an RFC determination, the ALJ must consider objective medical facts,

diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms,

including pain and descriptions of other limitations. 20 C.F.R. §§ 404. 1545, 416. 945; *see

Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F.

Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL

587459, at *8 (N.D.N.Y. Feb. 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  An

ALJ must specify the functions a plaintiff is capable of performing and may not simply make

conclusory statements regarding a plaintiff's capacities.  *Roat*, 717 F. Supp. 2d at 267; *Martone*,

70 F. Supp. 2d at 150; *Stephens*, 200 F. Supp. 3d at 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r

of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment also include a

narrative discussion, describing how the evidence supports the ALJ's conclusion, citing specific

medical facts and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD),

2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at

*7).

       **B. Evaluating Medical Evidence**

The regulations regarding the evaluation of medical evidence have been amended for

claims after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the current regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867-68, 2017 WL 168819 (Jan. 18, 2017); *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluated their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the current regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the current regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide that with respect to "consistency,"

"[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the current regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id*. §§ 404.1520c(b)(3), 416.920c(b)(3).

## VII. **ANALYSIS OF PLAINTIFF'S CLAIMS**

### A. **The Purported Inconsistency Between the Step Three Finding, RFC Determination and VE Testimony Does Not Present Grounds for Remand.**

At step three, the ALJ found that Plaintiff has moderate limitations in each of the four functional areas evaluated under what are known as the "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (T. 14-15.) Focusing on the moderate limitations in concentration, persistence, and pace, Plaintiff contends that the ALJ's RFC determination lacks "corresponding restrictions" that accurately account for the step three determination and Plaintiff's functional limitations. (Dkt. No. 8 at 10.) This Court disagrees, and finds no substantive conflict between the step three determination and the functional limitations included in the RFC. *See Julie M. v. Comm'r of Soc. Sec.*, No. 8:23-CV-518 (MJK), 2024 WL 664413, at *13 (N.D.N.Y. Feb. 16, 2024) (finding no inconsistency between a finding of moderate mental health limitations under the paragraph B criteria and an RFC that allows for

unskilled work).

To begin with, "[i]t is well established that a Step 3 determination is not an RFC assessment, but instead is used to rate the severity of mental impairment." *See Jay v. Comm'r of Soc. Sec.*, No. 17-CV-59S, 2018 WL 3688315, at *3 (W.D.N.Y. Aug. 3, 2018) (citing SSR 96-8p). Thus, a step three determination "need not carry over verbatim to the ultimate RFC determination because the two determinations require distinct analysis." *See Race v. Colvin*, No. 1:14-CV-1357, 2016 WL 3511779, at *3 (N.D.N.Y. May 24, 2016). Recognizing that fact, courts typically declined to remand merely because an RFC determination excludes a corresponding limitation found at step three. *Jay*, 2018 WL 3688315, at *3. Nevertheless, the ALJ's RFC determination should still be "proper, internally consistent, and supported by substantial evidence." *Id*. at *3.

The ALJ's RFC determination in this case satisfies that standard. Plaintiff contends that the RFC restriction from "work requiring a specific production rate" or "work which requires hourly quotas" does not adequately account for Plaintiff's moderate limitations in concentration, persistence, and pace. (Dkt. No. 8 at 13-14.) Even assuming that to be correct, Plaintiff's argument takes too narrow a view of the RFC determination. As the ALJ stated,

> While the undersigned acknowledges limitations in [plaintiff's] mental functioning, the longitudinal record is consistent with the performance of simple instructions, using judgment to make simple work-related decisions in a job with occasional changes in the routine setting, free of production rate or quota requirements, and limited contact with others.

(T. 22.) Regarding social interaction, the ALJ's RFC determination specifically limited Plaintiff to jobs requiring "occasional contact with coworkers and supervisors, and no interaction with the public." (T. 16.)

Courts within this Circuit have typically found that "moderate limitations in

concentration can be addressed by limiting an individual to unskilled work with simple tasks and decision making." *Jeff S. v. Comm'r of Soc. Sec.*, No. 8:23-CV-1576 (FJS/CFH), 2024 WL 5345046, at \*5 (N.D.N.Y. Dec. 11, 2024), *rep't and rec. adopted*, 2025 WL 254898 (N.D.N.Y. Jan. 21, 2025); *see also Benjamin C. v. Comm'r of Soc. Sec.*, No. 5:21-CV-872 (ATB), 2022 WL 16571699, at \*10 (N.D.N.Y. Nov. 1, 2022) ("By limiting plaintiff to unskilled work requiring only simple, routine tasks and simple work-related decisions, the ALJ accounted for the functional limitations associated with plaintiff's difficulties with concentration . . . .") (internal citation omitted); *see also Melissa L. v. Comm'r of Soc. Sec.*, No. 6:20-CV-6667( EAW), 2022 WL 593452, at \*5-6 (W.D.N.Y. Feb. 28, 2022) (noting "numerous courts in this Circuit have found that moderate limitations in areas such as 'maintaining attention and concentration, maintaining regular attendance, performing tasks independently, performing low stress and simple tasks, and/or responding appropriately to changes in a routine work setting' are appropriately accommodated by a limitation to unskilled work") (collecting cases).  That is precisely what the ALJ did in this case, resulting in an RFC determination that is both internally consistent with the moderate mental health limitations described in the ALJ's step three determination and supported by substantial evidence in the form of multiple psychiatric opinions assessing moderate limitations in attention and concentration, persistence, and pace.  *See Nichole T. v. Comm'r of Soc. Sec.*, No. 23-CV-0180 (LJV), 2024 WL 3378109, at \*5 (W.D.N.Y. July 11, 2024) (finding RFC determination limiting individual to performing "simple, unskilled routine work" that involves only "simple and routine instructions and tasks" with only "minimal changes in work routine and processes" with "no supervisory duties, no independent decision-making ..., [and] no strict production quotas" was consistent with evidence of moderate limitations in several functional areas including concentration, persistence, and pace.)

In challenging the RFC determination, Plaintiff also asserts that the ALJ's decision did not address VE testimony suggestive of even greater limitations in attention and concentration that would preclude competitive employment. (Dkt. No. 8 at 13-14.)  The relevant portion of the hearing transcript, reflecting questioning of the VE by the ALJ, provides:

> Q:     Okay.  And what is the customary tolerance for off-task behavior and absenteeism in the workplace?
>
> A:     Absenteeism, one day a month, off task, up to 15%.
>
> Q:     Okay.  And if an individual could only frequently, and by frequently, I mean up to two-thirds of the time, maintain attention and concentration for simple tasks, would that exceed the off-task tolerance and eliminate the ability to do competitive employment?
>
> A:     Yes, it would.

(T. 68.)

Crucially, although the ALJ considered greater restrictions at the hearing, her ultimate RFC determination did not find Plaintiff could only maintain the attention and concentration necessary to perform simple tasks up to two-thirds of the workday. (T. 16.)  The plain language of the RFC determination provides that Plaintiff "can" understand, remember and carry out simple instructions and "can" use judgment to make simple work-related decisions, and does not impose any durational limits on Plaintiff's ability to concentrate on simple tasks. (*Id*.)  Where the ALJ determined that Plaintiff could only "frequently" or "occasionally" meet the typical requirements of unskilled light work, she made explicit findings to that effect.  For example, the ALJ found that Plaintiff could "frequently climb stairs or ramps" and should have only "occasional contact with coworkers and supervisors." (*Id*.)

The ALJ presented a separate hypothetical to the VE that incorporated her ultimate RFC determination, and the VE identified several jobs existing in significant numbers in the national

economy that such hypothetical individual could perform. (T. 26-27, 66-69.)  It was reasonable

for the ALJ to rely on this testimony at step five.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d

Cir. 2009) (holding ALJ may rely on a VE's testimony regarding the availability of work as long

as the hypothetical facts the expert is asked to consider are based on substantial evidence and

accurately reflect Plaintiff's limitations.)

Because the ALJ's alternate hypothetical[2] to the VE imposing greater limitations with

regard to attention and concentration was not incorporated into her RFC determination, it does

not present any grounds for remand.  *Floyd v. Comm'r of Soc. Sec.*, No. 22-CV-07168 (HG),

2023 WL 8473837, at *3 (E.D.N.Y. Dec. 7, 2023) ("An ALJ may ask a vocational expert

multiple hypothetical questions, so long as the hypothetical on which the ALJ ultimately relies

matches a residual functional capacity assessment that is based on substantial evidence."); *Kevin

Thomas C. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1037 (CFH), 2022 WL 539392, at *13

(N.D.N.Y. Feb. 23, 2022) (finding no error in ALJ's multiple hypotheticals to the VE).

**B.    The ALJ properly evaluated Dr. Jeanne Shapiro's consultative psychiatric opinion.**

On February 16, 2023, Dr. Jeanne Shapiro performed a consultative psychiatric

examination of Plaintiff.  (T. 1027-32.)  Dr. Shapiro diagnosed unspecified bipolar disorder,

posttraumatic stress disorder with secondary panic disorder, social anxiety disorder, obsessive

compulsive disorder, and generalized anxiety disorder.  (T. 1031.)  In a medical source

statement, Dr. Shapiro opined:

> She does not appear to have any limitations understanding,
> remembering, and applying simple or complex instructions and
> directions or using reason and judgment to make work-related
> decisions.   She has marked to extreme limitations interacting

---

[2]    The ALJ presented additional hypotheticals to the VE regarding sedentary work and
social interaction that were not included in her final RFC determination, (T. 67-68.)  Plaintiff has
not challenged the ALJ's evaluation of those hypotheticals.

adequately with supervisors, coworkers, and public. Moderate limitations sustaining concentration and performing a task at a consistent pace, especially when she is feeling anxious. Moderate limitations sustaining an ordinary routine and regular attendance at work. Marked to extreme limitations regulating emotions, controlling behavior, and maintaining well-being. No limitations maintaining personal hygiene and appropriate attire. Mild to moderate limitations being aware of normal hazards and taking appropriate precaution. Difficulties are caused by psychiatric problems.

(T. 1030-31.)

The ALJ discounted Dr. Shapiro's opinion, labeling it "not completely persuasive." (T. 24.) The ALJ found the psychological consultant's opinion that Plaintiff has moderate limitations maintaining concentration, performing at a consistent pace, and sustaining an ordinary routine and regular attendance to be persuasive, "as they are supported by the examination and consistent with much of the other examinations of record and with the claimant's treatment modalities and her actual reports of her daily functioning." (*Id*.) In contrast, the ALJ found Dr. Shapiro's opinion that Plaintiff had "marked to extreme" limitations in her ability to regulate her emotions, control her behavior, and maintain her well-being to be unpersuasive, due to a lack of support in the treatment record, the opinion of the state agency consultants who reviewed Plaintiff's mental health records, and the report from Dr. Corey Anne Grassl, who conducted an earlier consultative psychiatric examination in June 2022.[3]

Plaintiff contends the ALJ failed to adequately articulate her reasons for finding the marked limitations set forth in Dr. Shapiro's opinion to be unpersuasive. (Dkt. No. 8 at 16-22.) In particular, Plaintiff contends that the ALJ omitted a substantive analysis of the supportability of Dr. Shapiro's opinion. (*Id*. at 18) This Court disagrees, and finds no grounds for remand on this basis.

_____

[3]    The ALJ did not specify how persuasive she found Dr. Grassl's opinion, other than suggesting it was more persuasive than Dr. Shapiro's. (T. 24.)

"At their most basic, the amended regulations require that the ALJ explain [his]findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. February 22, 2021). An ALJ's failure to explain the supportability and consistency of the medical opinions in the record is procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019*); see also Loucks v. Kijakazi,* No. 21-CV-1749, 2022 WL 2189293, at *2 (2d. Cir. June 17, 2022) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). However, the Second Circuit has recently clarified that an ALJ's procedural error in failing to explain how he or she "considered the supportability and consistency of medical opinions in the record" does not necessarily preclude affirmance of the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2. As the *Loucks* decision explained, it is well-settled that "[d]espite [an] ALJ's procedural error," a reviewing court can affirm if "a searching review of the record assures [the court] that the substance of the [regulation] was not traversed." *Id*., 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96). Thus, while a reviewing court may not affirm the Commissioner's decision based on an impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of the relevant factors can be gleaned from the ALJ's decision as a whole. *See, e.g. John L.M. v. Kijakazi,* No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2-3 (N.D.N.Y. August 18, 2022); *Ricky L. v. Comm'r Soc. Sec*., No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022).

Where an ALJ wholly omits the supportability analysis, remand is necessary. *See Thorne v. Comm'r of Soc. Sec.,* No. 20-CV-6513 (OTW), 2023 WL 579524, at *4 (S.D.N.Y. Jan. 27,

2023) (remanding where ALJ's analysis of medical opinion did not examine what findings treating physician used to support his opinion). Still, it is "proper to read the ALJ's decision as a whole" to avoid the "needless formality to have the ALJ repeat substantially similar factual analyses." *See Matthew S. v. Comm'r of Soc. Sec.*, No. 6:23-CV-00281 (AMN/ MJK), 2024 WL 2053412, at *6 (N.D.N.Y. Mar. 6, 2024), *rep't and rec. adopted*, 2024 WL 1635684 (N.D.N.Y. Apr. 16, 2024) (internal quotation omitted). Thus, courts have regularly held that an ALJ has sufficiently articulated his reasoning regarding supportability and consistency where he or she directly refers back to a "thorough discussion of the record evidence" that immediately precedes his analysis of the medical opinion evidence. *See Adam R. T. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1170 (FJS/ATB), 2023 WL 1775689, at *4 (N.D.N.Y. Feb. 6, 2023).

Here, the ALJ did not omit the supportability analysis. Her decision summarized Dr. Shapiro's consultative examination results that included the consultative examiner's observation that Plaintiff was cooperative and her manner of relating, social skills, and overall presentation were fair. (T. 22, 1029.) Plaintiff was appropriately dressed and well groomed, with normal posture and motor behavior, and appropriate eye contact. (*Id*.) Plaintiff's speech was intelligible and fluent and her thought processes were coherent and goal directed "with no evidence of hallucinations, or paranoia in the evaluation setting." (*Id*.) Plaintiff displayed an anxious affect and mood, and Dr. Shapiro noted that she was initially reluctant to discuss her symptoms. (T. 1029-1030.) The examination report reflects Plaintiff's eventual description of her depression and anxiety symptoms that she attributed to several prior traumatic experiences. (T. 1029-1030.) The ALJ's decision includes a review of all of these findings. (T. 22.)

Based on this review, the ALJ concluded that Dr. Shapiro's opinion regarding "marked to extreme limitations" in Plaintiff's ability to interact adequately with supervisors, coworkers, and

public, regulate her emotions, control her behavior, and maintain her well-being "appear to be based on the claimant's subjective reports as opposed to actual objective findings." (T. 24.) In referring back to her earlier summary of Dr. Shapiro's examination report, the ALJ adequately articulated the supportability factor and the record evidence supporting her decision to discount the most restrictive portions of Dr. Shapiro's opinion. *See Tara M. B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1058 (MAD/DEP), 2023 WL 7286669, at *4 (N.D.N.Y. Sept. 21, 2023) (ALJ's review of supportability was sufficient where the ALJ stated that the doctor's opinion was only "somewhat supported by [his] examination report," as the degree of some limitations recommended were not supported by the doctor's own objective findings), *rep't and rec. adopted*, 2023 WL 7281138 (N.D.N.Y. Nov. 3, 2023); *Sandra Marie C. v. Comm'r of Soc. Sec.*, No. 5:21-CV-328 (GLS), 2022 WL 4465415, at *2-3 (N.D.N.Y. Sept. 26, 2022) (ALJ properly considered supportability by discussing that the consultative examiner's opinion assessing marked limitations was "not supported by [that psychologist's] own mental status examination findings, which were relatively unremarkable"); *Johnathan M. v. Comm'r of Soc. Sec.*, No. 3:21-CV-1076 (DNH), 2022 WL 18831465, at *5 (N.D.N.Y. Nov. 9, 2022) (ALJ properly considered supportability where he observed that assessment of marked limitations conflicted with the consultative examiner's own examination findings, which were 'relatively unremarkable'").

Plaintiff has not identified any objective evidence from Dr. Shapiro's report that would contradict the ALJ's supportability analysis. Rather, Plaintiff contends that the ALJ should not have discounted Dr. Shapiro's opinion merely because it was largely based on Plaintiff's subjective description of her symptoms. Such contention is unconvincing in light of the ALJ's assessment that the marked and extreme limitations in Dr. Shapiro's opinion were inconsistent with the broader mental health record and Plaintiff's daily activities, not just that they were based

on subjective complaints.[4]

For example, the ALJ noted that Dr. Grassl's June 9, 2022 consultative examination report described Plaintiff's "normal appropriate appearance in which she has normal posture and behavior, she is well groomed, and her eye contact is appropriate." (T. 21, 949.) "Her speech is clear and fluent, her thought processes are coherent and goal oriented without evidence of hallucinations, delusions, or paranoia." (*Id*.) "Her orientation is full, and her sensorium is clear." (*Id*.) "Her attention and concentration are intact in that she could count to 20, do simple calculations and perform serial[]7's." (*Id*.) "Her recent and remote memory skills are intact in which she could immediately recall 3/3 objects and 3/3 objects after a delay." (*Id*.) "Her cognitive functioning is estimated to be average, and her general fund of knowledge is appropriate to experience with good insight and judgment." (T. 22, 949.) "Overall, her psychiatric symptomatology [] does not significantly interfere with her overall functioning." (*Id*.) Dr. Grassl opined that Plaintiff had mild limitations in regulating her emotions, controlling behavior, and maintaining well-being. (T. 949.) Dr. Y. Sherer, a non-examining psychiatric consultant who examined both Dr. Grassl and Dr. Shapiro's examination reports, opined that Plaintiff had moderate limitations in social interaction and adaptation. (T. 114.)

The ALJ also found that Plaintiff's mental health treatment record "generally show[s] full orientation, normal appearance, clear fluent speech, intact memory, cooperative interaction, intact concentration, and a generally ability to carry out at least simple daily tasks [] despite her mental health symptomology related to anxiety, depression, and PTSD." (T. 22.) In addition to the medical record, the ALJ also considered Plaintiff's activities of daily living, as reflected in

---

[4]    Rejection of a mental health opinion that is based solely on subjective complaints may be appropriate under certain circumstances. *See Michelle D. v. Comm'r of Soc. Sec*., No. 22-CV-6538, 2024 WL 108685, at *3 (W.D.N.Y. Jan 10, 2024) (explaining that an ALJ may reasonably reject an opinion that "simply parrot[s] [a claimant's] subjective complaints").

her function report, treatment notes, and hearing testimony. (T. 16-17, 22.)  These activities include "independent personal care, caring for her daughter and pets with some help, daily preparation of meals, light household chores such as vacuuming and doing laundry, occasional shopping in stores, driving a vehicle, money management, reading and watching television, socializing via text and video chat, and working nearly every year after the alleged onset date which all require at least basic daily mental functioning in the areas of memory, application, interaction, concentration, persistence, and adapting for participation." (T. 22, 60-63, 245, 249, 1030.)

In light of the ALJ's thorough evaluation of the treatment records, consultative examination reports, and evidence of Plaintiff's daily activities that clearly informed her evaluation of Dr. Shapiro's opinion, this Court can readily glean how the ALJ weighed the consistency and supportability factors, as required by the regulations. Thus, even if this Court were to agree with Plaintiff that the ALJ erred by failing to elaborate on her persuasiveness analysis, such error would be harmless.  *See John L.M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, *3 (N.D.N.Y. Aug. 18, 2022) (". . . reading the ALJ's decision as a whole, the Court can glean the ALJ's consideration of the consistency of [the medical] opinion from his analysis of the medical evidence showing benign physical examinations . . . . The Court therefore concludes that the substance of the regulation was not traversed and the ALJ's procedural error in addressing the consistency factor does not require remand.")

### C.    The ALJ's RFC Determination incorporated the "moderate" bending restriction included in Dr. Lorensen's consultative opinion.

Dr. Elke Lorensen conducted two physical consultative examinations of Plaintiff, on June 9, 2022 and February 16, 2023. (T. 937-940, 1034-1038.)  Dr. Lorensen issued identical opinions following each examination:

No gross limitations for sitting, standing, walking, and using the hands.  Moderate limitations for bending, lifting, carrying, pushing, and pulling.  She should avoid known respiratory irritants.

(T. 940, 1038.)  The ALJ found these opinions to be persuasive because there were supported by Dr, Lorensen's examination and consistent with the treatment record.  (T. 24, 25.)

Providing a more in-depth analysis of Dr. Lorensen's most recent opinion, the ALJ stated:

[T]hese findings are consistent with the treatment record and with the claimant's actual functioning which reflect some tenderness to palpation and limitation in range of motion due to pain, however, she has consistently shown 5/5 strength, normal sensation, and normal reflex findings with only intermittent gait abnormality and no use of an assistive device.  In addition, [Plaintiff reports] that she tends to her [own] personal care, she prepares meals, performs some light housework, and she shops in stores and drives a vehicle.

(T. 25 (record citations omitted))

Plaintiff contends that, although the ALJ labeled Dr. Lorensen's opinion to be persuasive, she erred by failing to explicitly incorporate moderate bending limitations into the RFC determination. (Dkt. No. 8 at 24-25.)  Plaintiff interprets this omission as a rejection of those moderate bending restrictions.  This Court rejects that interpretation of the ALJ's decision[5], as numerous other courts have considered this issue and concluded that an RFC limiting an individual to light work accommodates moderate postural restrictions on activities such as bending.  *See Katherine Marie S. v. Comm'r of Soc. Sec.*, No. 18-CV-233-TWD, 2019 WL 1427456, at *7 (N.D.N.Y. March 29, 2019) ("a RFC for light work sufficiently accounts for moderate postural limitations such as lifting, bending, reaching pushing, pulling, and/or carrying, even where it 'fail[s] to incorporate the moderate limitation[s] by name'"); *Raymonda C. v.*

---

[5]    As Defendant notes, the ALJ also found the prior administrative medical findings of state agency consultants Drs. R. Mohanty and I. Seok persuasive, both of whom found that Plaintiff could frequently bend at the waist and knees.  (T. 23-24, 87, 108.)

*Comm'r of Soc. Sec.*, No. 3:19-CV-0178 (GTS), 2020 WL 42814, at *4 (N.D.N.Y. Jan. 3, 2020) ("[A] 'moderate limitation' ... is essentially equivalent to an ability to perform light work.") (collecting cases); *Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (finding that moderate limitations for "repetitive heavy lifting, bending, reaching, pushing, pulling or carrying" are consistent with an RFC for a full range of light work); *Moore v. Comm'r of Soc. Sec.*, No. 16-CV-270, 2017 WL 1323460, at *8 (N.D.N.Y. Apr. 10, 2017) ("[M]oderate limitations for sitting, standing, walking, bending, climbing stairs, and lifting or carrying heavy objects ... [are] consistent with light work.") (citations omitted); *Martinez v. Comm'r of Soc. Sec.*, No. 13 Civ. 159, 2016 WL 6885181, at *13 (S.D.N.Y. Oct. 5, 2016), *rep't and rec. adopted*, 2016 WL 6884905 (S.D.N.Y. Nov. 21, 2016) ("[M]oderate restrictions for lifting, pushing, pulling, overhead reaching, stooping, squatting, prolonged standing, and prolonged walking ... are consistent with an RFC for light work."); *see also White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (summary order) (finding that a consultative examiner's assessment of moderate physical limitations supported a finding of light work). Therefore, the ALJ's failure to specifically reference moderate bending limitations in her RFC determination that Plaintiff could perform many forms of light work does not present grounds for remand.

Because Plaintiff's brief touches upon it, this Court has also reviewed the ALJ's general evaluation of the supportability and consistency of Dr. Lorensen's opinions and found no error meriting remand. The ALJ's decision includes a summary of Dr. Lorensen's June 2022 examination results, including a normal gait without use of an assistive device; a reduced ability to squat; full flexion, extension, and rotary movement in the cervical spine but sharply reduced flexion, extension, and rotation in the lumbar spine; and full range of motion and strength in the upper and lower extremities. (T. 20.) The ALJ also summarized the results of Dr. Lorensen's

February 2023 examination as showing "generally stable" cervical and lumbar spine flexion, extension, and rotation; with full range of motion in the shoulders, elbows, forearms, wrists, fingers, hips, knees, and ankles. (T. 20-21.)  The ALJ cataloged similar findings in the broader treatment record, and found those results consistent with Plaintiff's description of her daily activities that included care for her daughter and pets with assistance, simple meal preparation, light chores, and working in some capacity "nearly every year after the alleged onset date." (T. 21.)  In evaluating the supportability of Dr. Lorensen's opinions, the ALJ referred back to the two consultative physical examinations, before confirming their consistency with the previously discussed longitudinal record and plaintiff's activities of daily living.  For the reasons discussed previously, this Court finds that the ALJ's overall consideration of Dr. Lorensen's two consultative opinions was supported by substantial evidence.  *See Matthew S.* 2024 WL 2053412, at *6; *Adam R. T.,* 2023 WL 1775689, at *4.

**VIII.    CONCLUSION**

At best, Plaintiff's challenges to the ALJ's assessment of the relevant medical opinion evidence and the resulting RFC determination are "premised upon a disagreement over how the ALJ resolved arguably conflicting evidence."  *See Kimball v. Comm'r of Soc. Sec.*, No. 6:14-CV-0698 (LEK/ATB), 2015 WL 4251163, at *9 (N.D.N.Y. July 13, 2015).  This Court will not reweigh the evidence presented to the ALJ.  *See Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting

*Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *rep't and rec. adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

In light of the ALJ's thorough analysis, this Court concludes that her RFC determination that Plaintiff could perform less than the full range of light work and the resulting disability determination were supported by substantial evidence, as summarized above.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Defendant's motion for judgment on the pleadings (Dkt. No. 12) be **GRANTED**; Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) be **DENIED**; and Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    September 2, 2025
            Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge